IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| **BRANDON HODGES,**<br>          **Plaintiff,**<br><br>     v.<br><br>**UNITED STATES OF AMERICA,**<br>          **Defendant.**<br><br>*In re:  Brandon Hodges v. Charlene Morales,*<br>*Case No. CL2001360F-15, Newport News*<br>*Circuit Court* | Civil Action No. 4:21-cv-61 |

<u>**MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**THE UNITED STATES OF AMERICA'S MOTION TO DISMISS**</u>

**I.     INTRODUCTION**

Plaintiff Brandon Hodges ("Hodges") has filed a tort claim for money damages in state court against Charlene Morales ("Morales"), a District Manager at the U.S. Social Security Administration ("SSA") Field Office in Newport News, Virginia, for purportedly falsely instructing security guards and Federal Protective Service investigators that Hodges was not authorized to be on the SSA premises and directing them to detain and escort Hodges therefrom.

Hodges accuses Morales of slander, false arrest and false imprisonment, and intentional infliction of emotional distress.  *See* ECF No. 1-1 (Complaint).  Hodges' claims should be dismissed for at least three reasons.  First, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1) *et seq.* does not waive sovereign immunity for claims of slander, false arrest, and false imprisonment.  28 U.S.C. § 2680(h).  The absence of an express waiver of immunity deprives this Court of subject matter jurisdiction.  Second, Hodges has not plausibly alleged a claim for the disfavored tort of intentional infliction of emotional distress under Virginia law, which claim

Hodges must establish by clear and convincing evidence. Consequently, Hodges fails to state a valid FTCA claim, and sovereign immunity is not waived for his intentional infliction of emotional distress claim. Third, although Hodges pursued his mandatory administrative remedies under the FTCA, Hodges failed to file a lawsuit within six months of the final administrative denial of his claim as required by 28 U.S.C. § 2401(b). Because there is no genuine dispute that the instant action is untimely, his claim must be dismissed even if sovereign immunity had been waived.

## II. STATEMENT OF UNDISPUTED FACTS

1. At the time of the events giving rise to Hodges' claim, Morales was employed by the Social Security Administration as a district manager for SSA's Newport News Field Office. ECF No. 1-1 at ¶ 7. In this capacity, Morales was responsible for ensuring comprehensive oversight and enforcement of regulations, policies and systems affecting security in the office, and for taking appropriate action related thereto. Exhibit A, Declaration of Brandon Dell'Aglio ("Dell'Aglio Decl.") at ¶ 3.

2. The Hodges family owns the building in which SSA (through the General Services Administration) leases space. ECF No. 1-1 at ¶¶ 1-2; Exhibit A, Dell'Aglio Decl. at ¶ 4.

3. Hodges was initially appointed by his family to manage the leased property. ECF No. 1-1 at ¶ 3; Exhibit A, Dell'Aglio Decl. at ¶ 4.

4. On July 11, 2016, the Government sent Hodges' father, Robert Hodges, a cure letter, "serv[ing] as formal notification of the Government's rejection of Brandon Hodges as an acceptable worker due to a demonstrated history of untimely and unacceptable performance. Exhibit A, Dell'Aglio Decl. at ¶ 5 and Att. 1. The Government "require[d] a qualified property manager be provided within 10 calendar days" and provided a list of incidents and unaddressed items under the lease in support of its determination that Hodges was unacceptable. *Id.*

5. On August 18, 2016, Hodges returned to the SSA Newport News office. ECF No. 1-1 at ¶¶ 4-5; Exhibit A, Dell'Aglio Decl. at ¶ 7. He alleges that he was authorized to be on the premises and that he was there to effectuate the installation of flooring. ECF No. 1-1 at ¶¶ 4, 6. Morales informed the on-site security guards that Hodges was not authorized to be on the premises. *See id.* at ¶¶ 12, 20; Exhibit A, Dell'Aglio Decl. at ¶ 7. The security guards informed Hodges that he was not allowed on the premises. ECF No. 1-1 at ¶ 13. Hodges refused to leave the premises. Exhibit A, Dell'Aglio Decl. at ¶ 8. Thereafter, the security guards removed Hodges from the "construction zone" of the SSA Field Office. ECF No. 1-1 at ¶ 12. Hodges alleges that the security guards patted him down and handcuffed him. *Id.* at ¶¶ 14, 16. Ultimately, the security guards removed the handcuffs and escorted Hodges from the premises. *Id.* at ¶ 22.

6. Approximately two years later, Hodges submitted two SF-95 administrative tort claims, one to SSA and one to the Department of Homeland Security, which claims were received on August 17, 2018. Exhibit A, Dell'Aglio Decl. at ¶ 9 and Att. 2; Exhibit B, Declaration of Frank Levi ("Levi Decl.") at ¶ 4 and Att. 1. The SF-95s alleged Hodges was "falsely detained, handcuffed and aggressively questions [sic] by agents of Federal Protective Services. [sic] at the direction of Charlene Morales," that he was "slandered," and that he has "suffered severe distress, humiliation, embarrassment, anxiety and tension." *Id.* The SF-95s each sought money damages of $500,000. *Id.*

7. On September 10, 2018, SSA sent Hodges' attorney a letter indicating that it had reviewed Hodges' claim, which was being forwarded to DHS. Exhibit A, Dell'Aglio Decl. at ¶ 10 and Att. 3. The letter instructed Hodges to "direct all future correspondence regarding this claim to that office." *Id.*

8. The same day, SSA sent DHS a letter stating that it had determined that there is no evidence that a negligent act or omission of an SSA employee acting in the scope of his or her employment resulted in the injuries claimed, and that since the case involved security guards who were contractors for DHS, SSA was forwarding the claim to DHS for processing. Exhibit A, Dell'Aglio Decl. at ¶ 11 and Att. 4.

9. On September 24, 2018, counsel for DHS sent an e-mail to Hodges' attorney, acknowledging receipt of the SF-95, receipt of the claim transferred from SSA, and that in accordance with 28 C.F.R. 14.2(b)(2), DHS would act as the lead agency and adjudicate the claim on behalf of both DHS and SSA. Exhibit B, Levi Decl. at ¶ 6 and Att. 3. The e-mail also requested Hodges provide additional information about his claim and supporting documentation. *Id.*

10. On October 31, 2018, DHS sent Hodges' attorney another letter requesting further information about Hodges' claim and for supporting documentation. Exhibit B, Levi Decl. at ¶ 7.

11. DHS denied Hodges' SF-95 on July 26, 2019, and mailed the denial to his attorney at the address listed on his SF-95 on July 29, 2019. Exhibit B, Levi Decl. at ¶ 8 and Att. 4. The denial letter expressly advised Hodges that if he disagreed with the denial, he had six months to file a lawsuit in the appropriate Federal district court. *Id.*

12. On April 15, 2020, more than eight months after his administrative tort claim was denied by DHS, Hodges filed the instant action against Morales in an action styled *Hodges v. Morales*, CL2001360F-15, in Circuit Court for the City of Newport News. *See* ECF No. 1-1.

13. Hodges accuses Morales of slander by alleging that Morales stated that "Hodges had no legal right to be on the premises and should be detained," false arrest and detention by alleging she directed security guards to detain Hodges "without any sufficient legal excuse

therefore," and intentional inflection of emotional distress by having Hodges "arrested [and] handcuffed when she knew that he was rightfully on the property." ECF No. 1-1 at 25-27.

14. On May 11, 2021, the United States Attorney, acting pursuant to 28 U.S.C. § 2679(d)(1), and by virtue of the authority vested in him by 28 C.F.R. § 15.4, certified that Morales was acting within the scope of her federal employment at the time of the incident out of which Hodges' current claim arose. *See* ECF No. 1-2 (Certification).

15. On May 21, 2021, the United States removed Hodges' state court complaint to this Court pursuant to the FTCA on the ground that his action was for money damages for injury caused by the allegedly negligent or wrongful act or omission of an employee of the United States while acting within the scope of her employment. *See* ECF No. 1.

16. On May 21, 2021, the United States filed a Notice of Substitution substituting itself for Morales as the sole defendant with respect to Hodges' claim. *See* ECF No. 2.

### III. STANDARD OF REVIEW

#### A. Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3)

Federal courts are courts of limited jurisdiction and possess only those powers authorized to them by the Constitution and by federal statute. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Lack of subject matter jurisdiction is raised in a motion under Federal Rule of Civil Procedure 12(b)(1). *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1994).

Under Rules 12(b)(1) and 12(h)(3), a court must grant a motion to dismiss if it lacks subject matter jurisdiction over a claim. The burden to prove subject matter jurisdiction rests solely with the party seeking to invoke the Court's jurisdiction, the Plaintiff. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.

1982); *Williams*, 50 F.3d at 304. The Court is not required to accept as true the factual allegations of Plaintiff's complaint. *See Thigpen v. United States*, 800 F.2d 393, 396 (4th Cir. 1986), *overruled on other grounds, Sheridan v. United States*, 487 U.S. 392 (1988). A motion to dismiss on jurisdictional grounds requires close examination of the pleadings to determine whether the court is acting within the scope of its authority, and "argumentative (as opposed to reasonable) inferences favorable to the pleader will not be drawn and conclusory allegations or conclusions of law will not be credited." 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350 (3d ed. 2004).

A Rule 12(b)(1) motion may attack subject matter jurisdiction in one of two ways: a facial challenge or a factual challenge. *Adams*, 697 F.2d at 1219. A facial challenge asserts the complaint fails to state facts upon which subject matter jurisdiction may be based, and is evaluated by the Court using a Rule 12(b)(6) standard. *Id.* A factual challenge attacks the existence of subject matter jurisdiction in fact, apart from the complaint. *Id.* For such a challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In so deciding, the court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Williams*, 50 F.3d at 304; *see also Krembel v. United States*, No. 19-6774, 2020 WL 7042818, at *1 (4th Cir. Dec. 1, 2020) (unpublished) (noting that lack of subject matter jurisdiction for an FTCA claim should be raised in a Rule 12(b)(1) motion, and not a motion for summary judgment).

B. **Federal Rule of Civil Procedure 12(b)(6)**

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains

sufficient factual content to permit the court to reasonably infer the defendant is liable for the alleged misconduct. *Id.*; *see also Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 346 (4th Cir. 2006) (complaint must allege sufficient facts to permit the court to infer that all elements of his claim exists). A court need not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. A complaint is evaluated in its entirety, to include any documents attached or incorporated into the complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Ordinarily, a Rule 12(b)(6) motion "cannot reach the merits of an affirmative defense," but "where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

IV. **ARGUMENT**

  A. **The Federal Tort Claims Act Provides Only a Limited Waiver of the United States' Sovereign Immunity that does Not Extend to Hodges' Claims.**

As sovereign, the United States "'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (*quoting United States v. Testan*, 424 U.S. 392, 299 (1976). Any waiver of sovereign immunity by the United States must be unequivocally expressed. *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Eastern Associated Coal Corp. v. Director, Office of Workers' Compensation Programs*, 791 F.2d 1129, 1131 (4th Cir. 1986). The FTCA is a limited waiver of sovereign immunity by the United States, which grants district courts exclusive jurisdiction over civil suits for damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

7

28 U.S.C. § 1346(b)(1).

The jurisdiction conferred upon the District Courts under the FTCA is limited: "[t]he Act did not waive the sovereign immunity of the United States in all respects . . . ; Congress was careful to exempt from the Act's broad waiver of immunity several important classes of tort claims." *United States v. S.A. Empresa de Viacao Aerea Rio Grandese (Varig Airlines)*, 467 U.S. 797, 808 (1984); *see also Bowman v. United States*, 820 F.2d 1393, 1394 (4th Cir. 1987). Federal courts lack subject matter jurisdiction to review actions falling within any one of the FTCA exceptions. *See United States v. Orleans*, 425 U.S. 807, 813–814 (1976); *Thigpen*, 800 F.2d at 394 (the FTCA, "like all waivers of sovereign immunity, must be strictly construed in favor of the sovereign") (citation omitted); *Kokotis v. United States Postal Service*, 223 F.3d 275, 278 (4th Cir. 2000) ("Sovereign immunity can be waived only by the sovereign; the circumstances of its waiver must be scrupulously observed and not expanded by the courts.").

When the FTCA applies, the remedy against the United States is exclusive, and no claim may be brought against the purportedly negligent employee. 28 U.S.C. § 2679(b)(1); *Ross v. Bryan*, 309 F.3d 830, 833 (4th Cir. 2002) (Once the Attorney General or his designee certifies that an individual defendant acted within the scope of his federal employment and the United States is substituted as the sole defendant, the plaintiff may seek relief only against the United States under the FTCA). This is the case even if the United States has a defense to liability. *Maron v. United States*, 126 F.3d 317, 321–22 (4th Cir. 1997) ("[E]ven in cases where the United States has not waived its immunity, the United States must still be substituted and the individual defendant still remains immune from suit if the tort occurred within the scope of employment. The plaintiff, despite the seeming unfairness, cannot proceed against the individual defendants.").

As discussed below, because Hodges has failed to state a valid FTCA claim, all of his claims are barred by sovereign immunity and the Court lacks subject matter jurisdiction.

> **1. Hodges' Claims for Slander and False Arrest and Detention are Excepted from the FTCA's Waiver of Sovereign Immunity and Must be Dismissed.**

The FTCA's waiver of sovereign immunity is subject to several enumerated exceptions set forth in 28 U.S.C. § 2680. *See Berkovitz v. United States*, 486 U.S. 531, 535 (1988). If any of these exceptions apply, the effect is to "preserve the United States' sovereign immunity from suit and deprive the district court of subject matter jurisdiction." *Blanco Ayala v. United States*, 386 F. Supp. 3d 635, 639 (E.D. Va. 2019) *affirmed by* 982 F. 3d 209 (4th Cir. 2020) (citing *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001)).

Here, Hodges' allegations of slander and false arrest and detention state claims under Virginia's insulting words statute, Va. Code 8.01-45, and Virginia common law torts of false arrest and false imprisonment. *See* ECF No. 1-1 at ¶ 25; *Eaton v. Paramount Parks, Inc.*, 141 F.3d 1158 at *1, n.2 (4th Cir. 1998) (stating that in Virginia, a false arrest claim "is the same tort as false imprisonment") (unpublished table case); *Lewis v. Kei*, 708 S.E.2d 884, 890 (Va. 2011) (defining false imprisonment).

Slander, false arrest and false imprisonment are expressly excepted from the FTCA's waiver of sovereign immunity. 28 U.S.C. § 2680(h). Specifically, section 2680(h) provides that the provisions of section 1346(b) "shall not apply to" . . . "(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . ." 28 U.S.C. § 2680(h). Section 2680(h) covers not only the enumerated torts, but also "all tort actions that 'arise out of' any of the enumerated torts." *Bloch v. Executive Office of the President*, 164 F. Supp. 3d 841, 862 (E.D. Va. 2016) (citations omitted). Accordingly, the United States' sovereign immunity for Hodges'

slander and "false arrest and detention" claims is "preserve[d]," and this Court is "deprived . . . of subject matter jurisdiction," requiring dismissal. *Blanco Ayala*, 386 F. Supp. 3d at 639; *see also Talbert v. United States*, 932 F.2d 1064, 1066-67 (4th Cir. 1991) (holding that allegations officials had put false information into plaintiff's personnel records fell within the libel and slander exception and thus sovereign immunity had not been waived).

### 2. Hodges' Claim for Intentional Inflection of Emotional Distress Fails to State a Claim Under Virginia Law, and Therefore, Fails to State a Valid FTCA Claim.

Hodges' intentional infliction of emotional distress claim must be dismissed because Hodges fails to allege sufficient facts to satisfy any element of an intentional infliction of emotional distress claim under Virginia law. As such, he failed to establish a requisite element of a valid FTCA claim, namely that the "United States, if a private person, would be liable to [Hodges] in accordance with the law of the [Commonwealth of Virginia]." *See* 28 U.S.C. § 1346(b)(1).

In general, claims for intentional infliction of emotional distress are disfavored under Virginia law. *See, e.g.*, *A.H. by next friends C.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 476 n.18 (Va. 2019) (stating the tort has a "disfavored status" because "the prohibited conduct cannot be defined objectively, [and] clear guidance is lacking, both to those wishing to avoid committing the tort, and to those who must evaluate whether certain alleged conduct satisfies all elements of the tort.") (citation omitted); *see also Crittendon v. Arai Americas, Inc.*, No. 2:13–CV–567, 2014 WL 31490, at *4 (E.D. Va. Jan. 3, 2014) (same); *Contreras v. Thor Norfolk Hotel*, 292 F. Supp. 2d 798, 803 (E.D. Va. 2003) (citation and quotation omitted) ("because such emotional injury can be easy feigned," this tort is "not favored under Virginia law."); *Lewis v. Gupta*, 54 F. Supp. 2d 611, 621–22 (E.D. Va. 1999) ("Because the concept of 'outrageousness' 'fails to provide clear guidance either to those whose conduct it purports to regulate, or to those who must evaluate that conduct,' the tort is not favored in Virginia.").

10

Under Virginia law, to state a claim for intentional infliction of emotional distress, a plaintiff must allege (and ultimately prove by clear and convincing evidence) each of the following elements: (1) that the wrongdoer's conduct is intentional or reckless; (2) that the conduct is outrageous or intolerable; (3) that the alleged wrongful conduct and emotional distress are causally connected; and (4) that the emotional distress is severe. *Viers v. Baker*, 841 S.E.2d 857, 863 (2020) (citation omitted). As explained below, Plaintiff has not provided sufficient facts to plausibly allege a cause of action against the United States for intentional infliction of emotional distress.

### a. Intent

Virginia law requires that the plaintiff show that the defendant's conduct was intended to cause emotional distress to the plaintiff or was reckless with respect to the danger of that distress. *Sanford v. Virginia*, No. 3:08cv835, 2009 WL 2447959, at *2 (E.D. Va. July 28, 2009) (citing *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 343 (Va. 2008)). Acting intentionally means that the defendant engaged in conduct for the specific purpose of causing emotional distress to the plaintiff. *Id*. (citing *Almy v. Grisham*, 639 S.E.2d 182, 187 (Va. 2007)). Acting recklessly requires taking action without regard to the risk of causing emotional distress to another when the actor knew or should have known of the risk. *Id*. (citing *Delk v. Columbia/HCA Healthcare Corp.*, 523 S.E.2d 826, 833 (Va. 2000)).

As the Court explained in *Crittendon*, "[i]ntentionally or recklessly taking actions do not amount to intentionally or recklessly inflicting emotional distress. […] The actions may be vindictive and mean-spirited but they are not illustrative of intent to inflict emotional distress." 2014 WL 31490, at *6. A conclusory statement alleging intentionality or recklessness, standing alone, is insufficient to bolster a claim for intentional infliction of emotional distress. *Goldstein v. Costco Wholesale Corp.*, No. CIV.A. 02-1520, 2003 WL 22128245, at *4 (E.D. Va. Aug. 6, 2003).

11

Here, Hodges fails to sufficiently allege recklessness or intentionality in his complaint, as he simply tags Morales' actions as "intentional" and "reckless." Hodges contends that it was intentional and reckless of Morales to relay allegedly false information to on-site security guards and that she "smiled at him out of derision" while he was handcuffed. ECF No. 1-1 at ¶¶ 14-16, 17. However, such an assertion misunderstands the requirements of this first prong. Intentionality dictates that an actor set out with the specific intent to cause severe emotional distress to a victim, and "vindictive and mean-spirited" actions are not enough. *Crittendon*, 2014 WL 31490, at \*6. Hodges points to no evidence that lends itself to support his claim. Further, his allegations are not illustrative of Morales' intent to inflict emotional distress, as opposed to her intent to carry out official duties to ensure enforcement of policies affecting security in the SSA Newport News Field Office (including who accesses the premises and when). Hodges also fails to plausibly allege that Morales' instructions were in reckless disregard of a known or foreseeable risk of causing emotional distress. It can hardly be expected that there is a risk that a person in privity with a government contractor would have "severe distress," "anxiety, and tension," as a result of being told he was not authorized to access a Government facility. As such, Hodges has failed to allege facts sufficient to satisfy the intent prong for an intentional infliction of emotional distress claim.

      b.    **<u>Outrageousness</u>**

To qualify as outrageous conduct, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Goldstein*, 2003 WL 22128245, at \*3 (citing *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991)). Generally, courts are reticent to label conduct as outrageous. *See, e.g.*, *Tohotcheu v. Harris Teeter, Inc.*, No. 1:11–CV–767, 2011 WL 5873074, at \*5 n.6 (E.D. Va. Nov. 22, 2011) (citing the "demanding standard required for a plaintiff to state [such] a claim"); *Sanford*, 2009 WL 2447959, at \*3 (citation omitted) ("The conduct in question

must rise above the level of being merely 'insensitive and demeaning.'"); *Beardsley v. Isom*, 828 F. Supp. 397, 400 (E.D. Va. 1993) *aff'd sub nom. Beardsley v. Webb*, 30 F.3d 524 (4th Cir. 1994) (explaining the "difficulty of meeting this threshold requirement"); *Crittendon*, 2014 WL 31490, at *6 ("This prong is seldom met by plaintiffs under Virginia law . . ."). "[L]iability clearly does not extend to mere insults, indignities, threats, annoyance, petty oppressions or other trivialities." *Gaiters v. Lynn*, 831 F.2d 51, 53 (4th Cir. 1987).

Here, Hodges has failed to allege outrageous conduct that meets the second prong of the *Viers* test. Although Hodges recites the key terms of the tort, stating the conclusory allegation that "Morales' actions at all times were outrageous and intolerable," declaring this does not make it so. ECF No. 1-1. at ¶ 31; *see also Russo*, 400 S.E.2d 160, 163 ("This is not a negligence case where, according to Rule 3:16(b), an allegation of 'negligence' is sufficient without specifying the particulars. In the present claim, 'a plaintiff must allege all facts necessary to establish' the cause of action."). As the court said in *Crittendon*, "[t]hese vague allegations are precisely the threadbare pleadings *Iqbal* and Rule 8 guard against." 2014 WL 31490, at *7 (citation omitted).

Morales' instructions to security guards that Hodges was unauthorized to be on the premises and to remove him hardly constitute outrageous conduct, even if they were false.[1] *See, e.g.*, *Goldstein*, 2003 WL 22128245, at *3 (holding that defendant's act of calling the police and issuing a Notice Forbidding Trespass after plaintiff threatened defendant's employees did not rise to the level of requisite outrageous conduct); *Warner v. Buck Creek Nursery*, Inc., 149 F. Supp. 2d 246, 265 (dismissing claim because defendants allegedly false statements that plaintiff was

---

[1] In fact, Morales' instructions were not false, or at a minimum it was not unreasonable for Morales to believe that Hodges was not authorized on the premises, considering the Government's letter pre-dating this incident, in which Hodges was declared an unacceptable worker. *See* Exhibit A, Dell'Aglio Decl. at ¶¶ 5, 6 and Att. 1.

fired for theft in order to destroy plaintiff's reputation were "completely insufficient to demonstrate the level of outrageousness required under Virginia law"). In *Crittendon*, the court found allegations that defendants filed false reports that plaintiff stole money, fabricated information and asked other employees to file false reports to injure plaintiff's reputation and her career, and falsely stated that plaintiff was planning a drive by shooting of her former employer did not satisfy this element. *See* 2014 WL 31490, at *6-7. Ultimately, the court held that such "rumors and false reports . . . are not so extreme and outrageous as to permit recovery." *Id*. at *7.

Even if the security guards' actions of searching, handcuffing, and detaining Hodges in front of those present at the SSA Newport News Field Office could be attributed to Morales, which they should not be, they would still not satisfy the exacting standards of this element. *See, e.g.*, *Veney v. Ojeda*, 321 F. Supp. 2d 733, 735-736, 749 (E.D. Va. 2004) (granting summary judgment for defendants, finding "[t]here is equally no doubt that the officers' conduct, even assuming the truth of plaintiff's allegations, does not meet the rigorous *Russo* standard," when during a traffic stop, an officer wrapped his arms around the plaintiff, pinning plaintiff's arms to his sides, and then handcuffing him, all in the presence of the three other passengers in the car). Accordingly, Hodges' claim, which is predicated on an allegedly false report that he was not allowed at the SSA's Newport News Field Office, fails to allege facts evidencing outrageousness.

        **c.**      <u>**Causation**</u>

To meet the third prong of the *Viers* test, the alleged conduct must have a causal connection with the resulting emotional distress. *Sanford*, 2009 WL 2447959, at *4 (citing *Supervalu*, 666 S.E.2d at 343). More specifically, the plaintiff must plead that the defendant's conduct was the originating cause of his distress. *Id*. (citing *Almy*, 639 S.E.2d at 187–88). For instance, in *Lewis*, the Court found that a causal connection was possible because "the complaint allege[d] that as a direct result of [one of the defendant's] behavior as a participant in a conspiracy to defame and

14

prosecute [the plaintiff] maliciously, [the plaintiff] suffered from severe mental and emotional distress flowing from his one and a half year (529 days) imprisonment and from the general circulation of the allegation that he [was] a sexual predator." 54 F. Supp. 2d at 621.

Here, Hodges has failed to allege a causal connection between the United States' conduct and his alleged severe emotional distress, because he sets forth nothing more than a legal conclusion. Hodges alleges in conclusory fashion that, "As a direct and proximate result of each of Morales' action, Hodges suffered severe distress, humiliation, embarrassment, anxiety, and tension." ECF No. 1-1 at ¶ 33. This does not suffice, especially where Morales' alleged actions were mere direction to security guards that "Hodges is not allowed on the premises," and the acts alleged to cause Hodges emotional distress (handcuffing him in front of individuals present at SSA's Newport News Field Office and escorting from the premises) were taken by the security guards, not Morales. ECF No. 1-1 at 15.

### d. <u>Severity</u>

With regard to the final element of severe emotional distress, "liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Goldstein*, 2003 WL 22128245, at *3 (citing *Russo*, 400 S.E.2d at 163). To satisfy this element, a plaintiff must claim, for example, "that she had [some] objective physical injury caused by the stress, that she sought medical attention, that she was confined at home or in a hospital, or that she lost income." *Crittendon*, 2014 WL 31490, at *5; *see also Goldstein*, 2003 WL 22128245, at *3-4 (relying on same factors). For instance, in *Crittendon*, the Court found that plaintiff's conclusory allegations of "injury, damage, humiliation, inconvenience, embarrassment, litigation expenses, denial of employment, severe mental anguish, attorneys' fees, and pain" did not constitute severe emotional distress. *Id*. The Court noted that simply listing ailments in a conclusory fashion will not survive a motion to dismiss. *Id*.

Here, Hodges has failed to allege severe emotional distress sufficient to meet prong four of the *Viers* requirements.  In his complaint, Hodges alleges that he "has sought and received mental treatment and has suffered physical and mental stress that has negatively affected his ability to function in his work and personal life." ECF No. 1-1 at ¶ 33.  Much like the conclusory allegations in *Crittendon* that were deemed insufficient, these ailments do not indicate with any specificity the nature of any objective physical injury caused by the emotional stress, the type and duration of any medical attention he has received, where he allegedly received that medical attention, or how specifically his life has been negatively affected such as how he has been unable to work and lost income.  Additionally, it could hardly be said that these disturbances are so extreme that no reasonable person could endure them, as required by *Russo*.

      **B.**      <u>**Hodges' Action Must be Dismissed as it was Untimely Filed.**</u>

"A tort claim against the United States shall be forever barred unless . . . action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."  28 U.S.C. § 2401(b).[2]

As established in the Dell'Aglio and Levi Declarations, Hodges filed duplicate administrative claims with SSA and DHS on August 17, 2018.  <u>Exhibit A</u>, Dell'Aglio Decl. at ¶ 9 and Att. 2; <u>Exhibit B</u>, Levi Decl. at ¶ 4 and Att. 1.  DHS agreed to adjudicate the claim on behalf of both agencies pursuant to 28 C.F.R. § 14.2.  <u>Exhibit B</u>, Levi Decl. at ¶¶ 5, 6 and Att. 3.  DHS subsequently denied Hodges' claims on July 26, 2019.  <u>Exhibit B</u>, Levi Decl. at ¶ 8 and Att. 4.  Hodges was expressly advised in the denial letter that if he chose to pursue the claim

---

[2]   In *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015), the United States Supreme Court held that § 2401(b)'s time limits are not jurisdictional. *Id.* at 405, 412.  Therefore, this argument should be evaluated under the rubric of Federal Rule of Civil Procedure 12(b)(6).

further, he was required to file his lawsuit in *federal court* within six months of the date of the denial letter. Exhibit B, Levi Decl. at ¶ 9 and Att. 4 (emphasis added).

Hodges did not comply with either aspect of this instruction. First, Hodges never filed a complaint in federal court, as required by the FTCA. Instead he filed suit in the Circuit Court for the City of Newport News, an improper forum. ECF No. 1-1; *see Raplee v. United States*, 842 F.3d 328, 332 (4th Cir. 2016) ("The word "action" in § 2401(b) has only one reasonable meaning: it refers to a federal civil action."). Second, even if a state court complaint sufficed, which it does not, Hodges' complaint was not filed until April 15, 2020, more than 8 months after the denial letter was sent. Consequently, his complaint must be dismissed as it was not filed within six months after his administrative claims were denied. *See* 28 U.S.C. § 2401(b).

## V. CONCLUSION

For the foregoing reasons, the United States respectfully submits that Hodges' complaint should be dismissed.

Respectfully submitted,

UNITED STATES OF AMERICA,
Defendant

RAJ PAREKH
Acting United States Attorney

By: */s/ Garry D. Hartlieb*
Garry D. Hartlieb, Esq.
(*appearing pursuant to 28 U.S.C. § 517*)
Assistant United States Attorney
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510-1671
Telephone: (757) 441-6331
Facsimile: (757) 441-6689
E-mail: garry.hartlieb@usdoj.gov
*Counsel for United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2021, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing (NEF) to all counsel and parties of record. I further certify that a true copy of the foregoing was served this same day by United States mail, first class postage paid, addressed to Plaintiff's counsel of record in the state court proceedings:

J. Vance Stallings, Esq.
SIMMS SHOWERS LLP
136 Professional Circle
Williamsburg, VA 23185[3]
Telephone: (757) 641-0895
Email: jvancestallingsesq@gmail.com
*Counsel for Plaintiff*

By: */s/ Garry D. Hartlieb*
Garry D. Hartlieb, Esq.
(*appearing pursuant to 28 U.S.C. § 517*)
Assistant United States Attorney
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510-1671
Telephone: (757) 441-6331
Facsimile: (757) 441-6689
E-mail: garry.hartlieb@usdoj.gov
*Counsel for United States of America*

---

[3] Plaintiff's counsel's address on the complaint is "Montgomery, Kelley & McKinnon, PLC, 5520 Foundation Street, Williamsburg, Virginia 23188." On May 3, 2021, the undersigned learned that Plaintiff's counsel has not practiced with that firm since late 2019. The same day, Plaintiff's counsel requested the undersigned to instead serve the address provided herein.